Patricia Willoughby **TINSLEY,**
Plaintiff–Appellant,

v.

**FIRST UNION NATIONAL BANK,**
Defendant–Appellee.

**Equal Employment Opportunity Commission; The Council on Human Rights, Amici Curiae.**

No. 97–2640.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1998.

Decided Sept. 2, 1998.

**ARGUED:** Lamont Navarro White, Equal Employment Opportunity Commission, Washington, D.C., for Amicus Curiae EEOC; Terry N. Grimes, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, Virginia, for Appellant. William Fain Rutherford, Jr., Flippen, Densmore, Morse, Rutherford & Jessee, Roanoke, Virginia, for Appellee. **ON BRIEF:** C. Gregory Stewart, General Counsel, Vincent J. Blackwood, Acting Associate General Counsel, Equal Employment Opportunity Commission, Washington, D.C., for Amicus Curiae EEOC. Kerith Cohen, Flippen, Densmore, Morse, Rutherford & Jessee, Roanoke, Virginia, for Appellee. David R. Simonsen, Jr., Richmond, Virginia, for Amicus Curiae Council.

Before MURNAGHAN, NIEMEYER, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge NIEMEYER and Judge MICHAEL joined.

## OPINION

MURNAGHAN, Circuit Judge:

In 1979, Patricia Tinsley filed a charge of sex discrimination against First National Exchange Bank (now First Union National Bank of Virginia) with the Equal Employment Opportunity Commission (EEOC). The parties settled the claim. In 1993, First Union National Bank fired Tinsley. She filed another charge with the EEOC, alleging that her termination was in retaliation for her complaint of discrimination fourteen years earlier.

A district court granted summary judgment to the bank, holding both that Tinsley's

filing of her charge was untimely and that there was no genuine issue of material fact sufficient to support her claim of retaliation. Tinsley appealed.

We hold that Tinsley's filing of her charge was timely because the Virginia Council on Human Rights is a "deferral agency" with authority to seek relief from unlawful employment practices, so a claim arising within Virginia is subject to the 300–day limitations period, not the shorter 180–day period appropriate in states without such a deferral agency. With that longer limitations period, Tinsley complied. However, Tinsley has not established a genuine issue of material fact so far as retaliation was concerned. For that reason, summary judgment for the Bank was appropriate.

## I.

■ Because we review a grant of summary judgment, we are constrained to view all disputed facts in the light most favorable to Tinsley and to draw all reasonable inferences in her favor. See Halperin v. Abacus Technology Corp., 128 F.3d 191, 196 (4th Cir.1997). Tinsley began work for First National Exchange Bank (later acquired by Dominion Bank and currently First Union National Bank of Virginia, hereinafter the "Bank") in 1975. In 1979, Tinsley filed a charge against the Bank alleging a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1). The Bank and Tinsley entered into a settlement agreement in which the Bank, without admitting liability, agreed to compensate Tinsley $969.92 and to fulfill certain other conditions, including keeping the settlement agreement confidential. Tinsley continued to work for the Bank, and was even promoted in 1980 and in 1986. Tinsley has claimed, however, that she was mistreated and retaliated against repeatedly throughout her tenure at the Bank.

In 1993, Tinsley accepted an offer from Christle Morris of the Bank to transfer from the Bankcard/Lease Recovery Department into the Consumer Loan Recovery Department. On May 1, 1993, Tinsley began work in the new department as a legal specialist, supervised by Morris. The transfer worked out unhappily for all involved. In the two months that Tinsley served under Morris, she was officially reprimanded and given informal warnings of misconduct on numerous occasions. The Bank claims that Tinsley was insubordinate and unable to cooperate with others; Tinsley asserts that her reprimands were merely a "paper trail" compiled to justify her termination.

On June 24, 1993, the Bank fired Tinsley for misconduct and violation of company policy. Tinsley has asserted that her termination was in retaliation for the discrimination charge settled fourteen years earlier.

On or about June 25, 1993, Tinsley contacted the EEOC by telephone to file a complaint. The EEOC told Tinsley her case was too involved to take over the telephone and advised her to send her information in writing. On December 11, 1993, Tinsley sent to the EEOC by certified mail a detailed letter explaining her retaliation claim. The EEOC received the letter on or about December 13, 1993, 172 days after the allegedly retaliatory discharge.[1] Although the letter charging retaliation was filed within the 180 days after Tinsley's discharge, it was not sworn to under oath or affirmation.

On December 15, 1993, the EEOC wrote to Tinsley requesting that she contact the agency in order to schedule an interview within 30 days. Tinsley arranged the interview, which took place sometime prior to January 4, 1994. On January 4, the EEOC mailed Tinsley, for her signature, an official charge form and an affidavit drafted as a result of the interview. Tinsley signed the forms on January 28, 1994, and forwarded them to the EEOC on February 2, 1994—223 days after her discharge. The formal charge form and affidavit were therefore filed in the period between 180 and 240 days after Tinsley's discharge.

Following termination of administrative proceedings with the EEOC and the issuance of a right-to-sue letter, Tinsley filed the present complaint in district court. The district court granted summary judgment for the Bank, holding both that Tinsley's charge was

---

1. December 13 is the date stamped on letter, although Tinsley states that the letter was received by the EEOC on December 15, 1993, 174 days after the discharge.

not timely filed with the EEOC and that she could not establish a *prima facie* case of discriminatory retaliation. Tinsley timely filed a notice of appeal to us.

## II.

### A.

Before reaching the merits of Tinsley's claim, we address the procedural issue of whether Tinsley timely filed her charge of discrimination with the EEOC. The district court held that the appropriate limitations period for Tinsley's filing of her charge with the EEOC was 180 days, not 300 days, after the allegedly retaliatory discharge. Because Tinsley did not file a verified (that is, sworn to before a notary public, *see* 29 C.F.R. 1601.3(a))' charge with the EEOC within the 180–day period, the district court concluded that her claim was barred.[2]

▉ Section 706(e)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e)(1), establishes two potential limitations periods within which a discrimination charge must be filed with the EEOC. The basic limitations period is 180 days after the alleged unlawful employment practice. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency,[3] that is, "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e–5(e)(1).

When a charge is sent first to the EEOC instead of the appropriate state deferral agency, and the state prohibits the alleged employment practice, the EEOC will refer the claim to the state agency. The EEOC works out arrangements with each state deferral agency regarding such referrals. *See* 29 C.F.R. § 1601.13(c). Tinsley's charge was referred by the EEOC to the Virginia Council on Human Rights (the "Council") pursuant to such a work-sharing agreement. That referral to the state agency satisfied 42 U.S.C. § 2000e–5(e)(1)'s requirement that the aggrieved person must have instituted proceedings with the state deferral agency in order to qualify for the 300–day limitations period. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 111, 122–25, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988).

The state agency then has sixty days[4] in which to resolve the complaint on its own. *See* 42 U.S.C. § 2000e–5(c). After this period of deference to the state agency the charge is deemed filed with the EEOC, which may then begin its process of resolution. Because of the sixty-day deferral period, the 300–day limitations period within which a charge must be filed with the EEOC is effectively reduced to 240 days. *See Commercial Office Prods.*, 486 U.S. at 111, 108 S.Ct. 1666.

The district court rejected Tinsley's argument that the Council is a state deferral agency within the meaning of Title VII, and that therefore the longer 300–day limitations period should be applied. The district court held that the Council does not have the nec-

2. The district court also rejected Tinsley's claim that her untimely formal charge amended and related back to the date of her timely-but-unsworn letter. In so ruling the district court inexplicably ignored the applicable EEOC regulation, 29 C.F.R. § 1601.12(b), which explicitly allows such an amendment. What is more, the district court ignored the recent conclusion of this Circuit approving the very use of the regulation that Tinsley, joined by the EEOC, urges: allowing her verified claim to amend and relate back to the date her unverified claim was filed. *See Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir.1994) ("Thus we conclude that a reasonable construction of the EEOC's regulation would simply allow charges to be verified and to relate back so long as the charge is a viable one in the EEOC's files. . . .").

The district court additionally rejected Tinsley's claim that the EEOC's letters either established a grace period for filing a formal charge or equitably tolled the 180–day period. Because we hold that the appropriate statute of limitations period was 300 days, we need not resolve any of these other questions.

3. Also called a "Fair Employment Practice Agency" or "FEP agency." *See* 29 C.F.R. § 1601.70.

4. The state's exclusivity period is increased to 120 days during the first year of the state or local law prohibiting the employment practice. *See* 42 U.S.C. § 2000e–5(c). A state agency may waive its right to the period of exclusive processing. *See* 29 C.F.R. § 1601.13(a)(3)(iii).

essary authority required by 42 U.S.C. § 2000e–5(e)(1) to qualify as a deferral agency. *See also, e.g., McGuire v. Commonwealth of Virginia,* 988 F.Supp. 980, 985–86 (W.D.Va.1997); *Young v. Sheetz, Inc.,* 987 F.Supp. 496, 499 (W.D.Va.1997); *Tokuta v. James Madison Univ.,* 977 F.Supp. 763, 764–66 (W.D.Va.1997); *cf. Dorsey v. Duff's Motel, Inc.,* 878 F.Supp. 869, 870 (W.D.Va.1995) (interpreting 42 U.S.C. § 2000a–3(c)).

▪ We hold, to the contrary, that the authority granted to the Virginia Council on Human Rights is sufficient to qualify it as a deferral agency under Title VII. The appropriate limitations period for filing a charge with the EEOC of an employment practice proscribed by Virginia law, therefore, is 300 days.

To qualify as a deferral agency, the Council must be "a State or local agency with authority to grant *or* seek relief from [an unlawful employment] practice *or* to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e–5(e)(1) (emphasis added). Because the powers to "grant" relief, "seek" relief and "institute criminal proceedings" are listed in the disjunctive, an agency need only possess one of the three statutory powers in order to qualify as a deferral agency. *See* 29 C.F.R. § 1601.70(a)(2). The Council concededly does not have authority to "grant" relief from unlawful employment practices or to "institute criminal proceedings with respect thereto." Therefore, the Council qualifies as a deferral agency only if the Council is authorized to "seek relief from" unlawful employment practices.

Two powers granted to the Council by the Virginia Human Rights Act, Va.Code §§ 2.1–714 to –725 (Michie 1995 & Supp.1997), constitute the requisite authority to "seek relief." First, "[t]he Council may investigate complaints alleging an unlawful discriminatory practice under a federal statute or regulation and attempt to resolve same through conciliation." Va.Code § 2.1–717 (Michie Supp.1997); *see also* Va.Code § 2.1–720(7) (Michie 1995) (empowering the Council "[t]o receive, investigate, *seek to conciliate,* refer to another agency, hold hearings pursuant to the Virginia Administrative Process Act, and make findings and recommendations upon complaints alleging unlawful discriminatory practices") (emphasis added). To attempt through voluntary conciliation to obtain compensation or other redress for individuals aggrieved by unlawful employment practices is to "seek relief" within the ordinary and common-sense meaning of the words. A voluntary settlement of a claim of unlawful employment practice provides "relief" from that practice to the aggrieved person.

The Bank, in defense of the district court's opinion, argues that an agency must possess much broader-sweeping powers than does the Council to qualify as a deferral agency under 42 U.S.C. § 2000e–5(e)(1). The power merely to receive and process complaints and to attempt to persuade an employer voluntarily to settle a claim is insufficient, the Bank contends, "because it ignores the simple fact that the Council has absolutely no authority of its own to prevent or remedy unlawful employment practices under state law." That fact, albeit simple, is irrelevant: the power to "prevent or remedy" unlawful employment practices is the power to *grant* relief, not the power to *seek* relief.

The Bank further argues that our interpretation of Title VII "is so broad it is essentially meaningless." The Bank asserts that under that interpretation, even Tinsley or her attorney would qualify as a "deferral agency" because either could investigate the claim and invite the employer to conciliate the complaint.

The argument is specious. Neither Tinsley nor her attorney is an officially authorized "State or local agency" as required by Title VII. Moreover, that an agency with such limited powers could be an official "deferral agency" is by no means an absurd result. A state such as Virginia may rationally decide that it wants all employment discrimination claims to be deferred to an agency that will do no more than attempt voluntary conciliation before the EEOC begins an adversary proceeding. *Cf. Burlington Indus., Inc. v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998) (noting "Congress' intention to promote conciliation rather than litigation in the Title VII context"); *Crosslin v. Mountain States*

*Tel. & Tel. Co.,* 422 F.2d 1028, 1030–31 (9th Cir.1970) (holding, in light of the legislative history of Title VII and the fact that the statute requires only 60 days of deference to a deferral agency rather than a longer stay of the EEOC's litigation powers, that an Arizona commission authorized to "endeavor to eliminate [unlawful employment practices] through means of conference, conciliation and persuasion" qualified as a Title VII deferral agency), *vacated,* 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971); *Hadfield v. Mitre Corp.,* 562 F.2d 84, 87 (1st Cir.1977) (holding that the relevant consideration in determining whether an agency has the authority to seek relief within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. § 633, is whether the agency is authorized to seek voluntary compliance).

Second, the Virginia Human Rights Act grants the Council further authority to seek relief for aggrieved claimants:

> With the approval of the Attorney General, to *seek,* through appropriate enforcement authorities, prevention of or *relief from an alleged unlawful discriminatory practice;* however, the Council itself shall have no power to issue subpoenas, award damages, or grant injunctive relief.

Va.Code § 2.1–720(14) (Michie 1995) (emphasis added). The Bank asserts that because § 2.1–720(14) requires the Council to obtain the approval of the Attorney General before seeking relief from alleged unlawful discriminatory practices, and the Council must act through another enforcement authority to seek that relief, "the Council *itself* is unable to seek relief." However, an agency that is authorized to seek relief from unlawful employment practices with permission of another state agency is still an agency authorized to seek relief. Likewise, an agency that is required to act through other state agencies when seeking relief is still an agency authorized to seek relief.

The Commonwealth of Virginia has chosen to vest some authority to seek relief in more than one agency, who are to work in tandem. It is the Commonwealth's prerogative to decide how best to structure its agencies. Congress intended that a state be given an exclusive period of time in which it could seek to resolve complaints of unlawful employment practices in a manner of its own choosing. Virginia's choice to vest certain authority in multiple agencies to be exercised cooperatively is no less legitimate than another state's choice to establish a single independent agency.

▪ Finally, we note that the EEOC has determined that the Virginia Council on Human Rights is a deferral agency. *See* 29 C.F.R. § 1601.74(a). Because the EEOC is the agency with primary responsibility for enforcement of Title VII, deference is due to its interpretation of Title VII so long as that interpretation is reasonable. *See EEOC v. Techalloy Maryland, Inc.,* 894 F.2d 676, 678–79 (4th Cir.1990). Here, the EEOC has interpreted the language "authority to ... seek relief from such practice" in § 706 of Title VII to include the authority to seek to resolve alleged unlawful employment practices by means of conciliation, as the Council is authorized to do.

> [I]t is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by grammatical or any other standards. Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference.

*Commercial Office Prods. Co.,* 486 U.S. at 115, 108 S.Ct. 1666.

▪ The level of deference to be afforded to EEOC interpretations of Title VII "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 257, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (quoting *General Electric Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976)) (internal quotation marks omitted), *overruled by statute on other grounds.* The Bank argues that the EEOC's interpretation is entitled to no deference because it is inconsistent with earlier EEOC interpretations. *See, e.g., Crosslin,* 422 F.2d at 1030 (noting that the EEOC was

of the position that the relief that a state agency must be authorized to grant or seek must approach the full measure of relief available under Title VII for the state agency to qualify as a deferral agency). However, the EEOC's current interpretation is still due deference because its consideration is thorough and its reasoning is valid. The EEOC knows better than a district court what authority a deferral agency should have before it is worthwhile for the EEOC to enter into work-sharing agreements with that agency. We accept the EEOC's opinion that the authority to seek relief through conciliation is enough to justify the special treatment due to deferral agencies, even though it is not the same opinion offered seventeen years earlier.

In sum, Virginia's statutory scheme authorizes the Virginia Council on Human Rights to seek voluntary compliance with Virginia and federal employment laws and, in conjunction with the Virginia Attorney General's office, to bring enforcement actions to force compliance with those laws. Although the authority to enforce employment laws in Virginia is divided between several offices, Virginia's statutory scheme effectively sets up an agency—the Council—that is as deserving of deference as any other state's more unitary agency. The Virginia Council on Human Rights is a qualifying deferral agency because it has the authority to seek relief from unlawful employment practices, and therefore discrimination claims filed in Virginia are subject to the 300–day period of limitations. We conclude that Tinsley's filing of her formal charge on February 2, 1994, 223 days after the allegedly retaliatory discharge, was timely.

### B.

■ However, victory on a procedural issue by no means ensures success on the merits. Where all the pleadings, responses to discovery and the record reveal that there are no genuine issues of material fact and that the one party is entitled to judgment as a matter of law, summary judgment is appropriate. *See* Fed.R.Civ.P. 56(c). The district court granted summary judgment to the Bank, because it found that Tinsley could not meet her burden of production under the three-stage proof scheme established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "The series of proofs and burdens outlined in *McDonnell Douglas* apply to retaliation claims." *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1228 (4th Cir.1998). We have reviewed the district court's grant of summary judgment *de novo, see Halperin,* 128 F.3d at 196, and now affirm.

■ Under the *McDonnell Douglas* proof scheme, Tinsley must first offer evidence sufficient to establish a *prima facie* case of discriminatory retaliation. *See Karpel,* 134 F.3d at 1228. The burden then shifts to the Bank to articulate some legitimate, nondiscriminatory reason for its action. *See id.* If it does so, then the burden shifts back to Tinsley to prove that the asserted reason is a pretext for discriminatory retaliation. *See id.* The district court held that Tinsley could not establish a *prima facie* case of retaliation because she failed to produce evidence of a causal connection between her original claim of discrimination and her termination fourteen years later. It further found that Tinsley had not brought forth any evidence to demonstrate that the Bank's given reasons for her discharge were pretextual.

■ Preliminarily, Tinsley argues that the district court erred in focusing solely on the evidence that her *termination* in 1993 was retaliatory, and ignoring her asserted evidence of retaliatory *harassment* throughout the 14 previous years since her original charge of discrimination was filed. She maintains that all such earlier evidence is relevant because she is proceeding on a "continuing violation" theory. However, in order to find a continuing violation (and thereby to allow Tinsley to prosecute claims of discrimination pre-dating the 300 days before her charge was filed) we must first conclude that there was a *present* violation. *See Hill v. AT & T Techs., Inc.,* 731 F.2d 175, 180 (4th Cir.1984). "It is *only* where an actual violation has occurred within that requisite time period [*i.e.,* within the period of [300] days before the filing of a charge with the EEOC] that under any possible circumstances the theory of continuing violation is sustainable."

*Id.* (quoting *Woodard v. Lehman,* 717 F.2d 909, 915 (4th Cir.1983)) (first alteration in original) (internal quotation marks omitted). Because, as described below, the evidence presented was insufficient to sustain Tinsley's claim for retaliatory discharge, we cannot consider any other alleged instances of harassment or retaliation that occurred outside the scope of the limitations period.

### 1. *Tinsley has not established a* prima facie *case of retaliation*

 Summary judgment was appropriate because Tinsley has not offered evidence sufficient to establish a *prima facie* case that her 1993 discharge was in retaliation for her 1979 claim of discrimination. To prove a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the employer took adverse action against her, and (3) there was a causal connection between the activity and the adverse action. *See Karpel,* 134 F.3d at 1228. Tinsley has satisfied the first two elements: she filed a claim of discrimination in 1979, and her employer fired her in 1993. However, Tinsley has produced no evidence to establish that there is a genuine issue regarding the third element.

Normally, very little evidence of a causal connection is required to establish a *prima facie* case. *See id.* at 1229. In fact, we have held that merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient to "make a *prima facie* case of causality." *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989).

But in Tinsley's case, the period of fourteen years separating her filing of a charge of discrimination and her termination by the Bank is far too long a period of time to raise by itself an inference of retaliation. The Bank had innumerable chances during the fourteen year period to retaliate against Tinsley if it so desired. On the contrary, the Bank promoted Tinsley twice during those years.

Nor does Tinsley provide any direct evidence that her termination was in retaliation for her protected action. She argues that the statements of Melvin Turner, who was once a Vice President of the Bank, demonstrate that the Bank harbored a grudge against Tinsley for her filing of a discrimination claim. However, the comments to which Tinsley refers were allegedly made by Turner some time before 1988—at least five years before Tinsley's termination. In fact, by the time Tinsley was fired, Turner no longer worked at the Bank. Furthermore, the document in which the alleged statements of Turner are recounted is an unsworn statement, and therefore inadmissible for summary judgment purposes. *See Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993).

Tinsley attributes the conclusion, that no question of fact exists concerning whether her termination was causally related to her earlier sex discrimination claim, to the failure to view her evidence in the light most favorable to her. That evidence consists of the affidavits and statements of numerous coworkers, customers, and attorneys regarding their observations of Tinsley. Many of the statements are unsworn assertions that are inadmissible for summary judgment purposes. Other statements regard Tinsley's experiences at the Bank in the years preceding her termination, but do not address the actions that Tinsley alleges were retaliatory. Yet other statements praise Tinsley's treatment of customers and clients, but do not address any actions taken by the Bank.

Only one affidavit addresses the allegedly retaliatory discharge: the affidavit of Cha Cha Lizette Short. Short's statement asserts that "management didn't like [Tinsley]" and that Tinsley "was the prey with no where [sic] to run and no where [sic] to hide." However, her statement does not support the proposition that management's dislike of Tinsley was based on the fourteen-year old discrimination charge. Short does not provide any details about why Tinsley was fired. In fact, she attests "I do not know all of what happened because I wasn't in that area and I had been told I needed to stay on my side of the room, but, everybody knew something was up." Short's affidavit simply does not provide any evidence that Tinsley's termination was causally related to her discrimination charge.

The nail in the coffin of Tinsley's *prima facie* case is that she provides no evidence that the supervisor who fired her, Christle Morris, even knew that Tinsley had filed a claim for discrimination. Morris began work at the Bank in 1984, five years after Tinsley's claim was settled. She swears in an affidavit that prior to her firing Tinsley, she had "no knowledge of claims, charges, lawsuits, or actions of any kind filed by Ms. Tinsley" against the Bank. Moreover, Tinsley admitted in her deposition that the only basis she had for believing that Morris knew about the 1979 settlement was Morris's "harassment" of Tinsley. But the mere fact that adverse action occurred is not evidence that the action was retaliation for the filing of a claim; otherwise, the third element of the *prima facie* case would have been read out of existence.

In sum, the district court was correct to grant summary judgment to the Bank because Tinsley cannot establish a *prima facie* case of retaliation.

2. *Tinsley has not demonstrated that the legitimate reasons given for her termination were pretext or that discrimination was the true reason*

Even if Tinsley had satisfied her burden of establishing a *prima facie* case, in order to reach the jury she would still have to demonstrate that the legitimate reasons given for her termination were a pretext for discriminatory retaliation. *See Vaughan v. Metrahealth Cos.*, 145 F.3d 197, 201–02 (4th Cir.1998). Affirmative evidence of retaliation that makes up a *prima facie* case, even if it is itself insufficient to prove discriminatory retaliation, may suffice to preclude summary judgment if the employer's asserted legitimate reasons for the action have been undermined. *See Burns v. AAF–McQuay, Inc.*, 96 F.3d 728, 732, 734 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997). But here Tinsley did not demonstrate that the reasons given for her termination were pretextual or that the real reason was discriminatory retaliation. *See Karpel*, 134 F.3d at 1229 ("Because she presented no evidence that the reasons given for her transfer were pretextual, Karpel

failed to raise a genuine issue of material fact.").

The Bank's evidence documents a series of reprimands given to Tinsley by Morris, culminating in Morris firing Tinsley. The stated reasons given for Tinsley's termination were "Misconduct—Behavior which reduces compatibility and harmony in the work unit" and "Violation of company policy—Violation of conditions of employment." Each of the instances of alleged misconduct by Tinsley that Morris recounts as a basis for Tinsley's termination may seem *de minimis* when viewed in isolation. However, when the numerous instances are considered as a whole, Morris's explanation that Tinsley's "constant complaining, gossiping and stirring up of trouble among co-workers were detrimental to the unit," establishes a legitimate, non-retaliatory basis for Tinsley's termination.

Tinsley offers no evidence that the events recounted in Morris's affidavit are untrue or that retaliation was the true reason for Tinsley's firing. Instead Tinsley merely asserts that Morris had no knowledge of Tinsley's excellent work record at the Bank in the eighteen years *preceding* the period in which Morris was Tinsley's supervisor. But that is irrelevant. The uncontested evidence establishes that Morris honestly believed that Tinsley deserved to be discharged. The fact that Tinsley had a good track record *before* she worked for Morris does not establish that Morris's criticisms of Tinsley's later performance were false or that the real reason for Morris firing Tinsley was retaliation.

Furthermore, although the affidavits put forth by Tinsley document the fact that certain co-workers, Bank customers and attorneys believed Tinsley was doing a good job, they fail to address whether management honestly believed that Tinsley was doing a good job. It is the perception of the decision maker which is relevant to the question of retaliation, not the opinions of Tinsley's co-workers or other third parties. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir.1991). Because Tinsley presented no evidence tending to show

that the Bank's given reasons for her termination were false or that retaliation was the real reason, summary judgment for the Bank was properly granted.

### III.

Although Tinsley filed her claim in a timely manner, she has failed to produce sufficient evidence to establish a *prima facie* case of retaliation, or to demonstrate pretext. Accordingly, the district court properly granted summary judgment to the Bank.

*AFFIRMED.*