**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NADER AFZAL,
<u>Plaintiff-Appellant,</u>

v.

No. 98-1011

ATLANTIC COAST AIRLINES,
INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-96-1537-A)

Argued: December 1, 1998

Decided: April 15, 1999

Before MURNAGHAN, LUTTIG, and KING, Circuit Judges.

_____

Vacated and remanded by unpublished opinion. Judge King wrote the
majority opinion, in which Judge Murnaghan joined. Judge Luttig
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Michael Craig Subit, BERNABEI & KATZ, Washington,
D.C., for Appellant. Brian S. Harvey, BAKER & HOSTETLER,
L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Debra S. Katz,
BERNABEI & KATZ, Washington, D.C.; Elaine Charlson Bredehoft,
CHARLSON & BREDEHOFT, P.C., Reston, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

KING, Circuit Judge:

Nader Afzal appeals the district court's grant of summary judgment to Atlantic Coast Airlines, Inc. (ACA) in this Title VII action, in which Afzal alleged that he was impermissibly discharged by ACA on account of his national origin. We conclude that a genuine issue of material fact exists as to the reason for Afzal's termination. Accordingly, we vacate the judgment below and remand the case for trial.

I.

Mr. Afzal is of Pakistani-Indian national origin. He worked as an airline pilot for ACA until 1995, when he was terminated after consecutively failing three "recurrent" oral proficiency examinations. Afzal contends that these oral exams were a sham, and that he was actually discharged because of his national origin.

The Federal Aviation Administration (FAA) requires all pilots and co-pilots to periodically complete either recurrent flight training or a proficiency check. 14 C.F.R. § 121.433(c)(1) (1998). According to the evidence submitted by Afzal in opposition to ACA's motion for summary judgment,[1] the recurrent training, consisting of a comprehensive oral examination and a flight proficiency test, is not as rigorous as the initial training to which all prospective crew members are

_____

[1] In evaluating the record evidence, we must view the facts in the light most favorable to Afzal, giving him the benefit of all reasonable inferences drawn therefrom. Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 438 (4th Cir. 1998). Our review of the district court's grant of summary judgment to ACA is de novo. Id. at 442. Summary judgment is appropriate only where the pleadings and discovery materials disclose "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

subjected. Moreover, of the two training components, the oral exam is less challenging than the flight test. Indeed, prior to 1995, no one at ACA had ever failed the oral exam more than once.

Afzal completed his recurrent training successfully from 1990 to 1994. The evidence further reveals that Afzal's flying ability is exemplary, and that there is a correlation between flying ability and performance on the oral examinations.

In August 1993, Afzal attended a training course taught by Captain David Gwinn. During introductions, Gwinn asked Afzal what kind of name "Nader" was. Upon hearing Afzal's response, Gwinn remarked that he would instead call him "Tom." Gwinn admits the incident, for which he was reprimanded by ACA, but notes that he called Afzal "Joe."

Later that year, Afzal sought to be promoted from first officer to captain. Afzal successfully completed a written test administered as part of the upgrade training, but he failed an oral examination. Afzal attributes the failure to stress in his life stemming from his mother's illness. After his mother's medical condition improved, Afzal passed the oral exam, retaining the rank of first officer. In 1994, Afzal earned his promotion to captain.

On June 1, 1995, Afzal was given a recurrent oral examination by Gwinn, who, two years earlier, had refused to use Afzal's true name. Afzal contends that he answered approximately ninety percent of Gwinn's questions correctly, well in excess of the minimum passing grade. Gwinn nevertheless failed Afzal, asserting that Afzal "need[ed] more training." Asked by Afzal to explain this statement, Gwinn stated, "You foreigners, you come here and think you can do whatever you want. I call the shots here, not you." Contrary to the industry practice and his own custom, Gwinn did not document Afzal's alleged shortcomings on the examination.

As a result of his failure, Afzal was required to take the oral exam a second time. This exam was administered to Afzal and a non-minority pilot on June 19, 1995, by Captain Todd Ballack, and Afzal again failed. Afzal maintains, however, that his answers to Ballack's questions were virtually identical to those given by the other pilot,

3

who passed the exam. Ballack's written documentation of the exam demonstrated that Afzal had given nine inaccurate responses, which, according to expert testimony in the record, would not have justified a failing grade.

The collective bargaining agreement between ACA and the pilots' union provides that a pilot who twice fails to successfully complete recurrent training may either make a third attempt or accept a demotion. Should the pilot choose the former option but again fail the training, the company may discharge the pilot.

Afzal elected to retake the training. On June 27, 1995, Afzal was tested by Captain Melanie Peek, the director of the training program for the particular aircraft on which Afzal sought certification. This third oral exam was, according to Afzal's expert, atypical of those customarily given pilots. The correct answer to a number of the questions, for example, could only be supplied by those persons having specialized knowledge of ground maintenance systems. Afzal was unable to accurately answer these highly technical questions, and he failed the exam.

Afzal, having failed the recurrent training three times, was discharged by ACA. He filed this action against ACA in the district court on October 25, 1996, alleging, inter alia , that he had been terminated because of his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. At the conclusion of discovery, ACA moved for summary judgment.

On December 12, 1997, the district court granted ACA's motion, ruling that, under the evidentiary model announced by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Afzal had not demonstrated that he was qualified to retain his captaincy.**2**

_____

**2** Under the McDonnell Douglas  model, a Title VII complainant in Afzal's position has the initial burden of demonstrating that (1) he is a member of a protected class; (2) he was the target of an adverse employment action, e.g., termination; (3) he was qualified to remain employed in the position; and (4) the position thereafter remained open to applicants possessing similar qualifications. See Karpel v. Inova Health Sys-

4

The court alternatively concluded that Afzal had not adduced evidence sufficient to show that the facially legitimate reason articulated by ACA for the termination, i.e., that Afzal failed three recurrent oral examinations, was merely a pretext for unlawful discrimination. Afzal appeals.

II.

Afzal provided direct evidence of discrimination that would be sufficient to sustain a jury verdict in his favor. A reasonable juror could readily conclude that Gwinn's statement immediately following the oral examination, in which he called Afzal a "foreigner," indicated that Gwinn harbored animus toward Afzal on account of the latter's national origin. A conclusion thus drawn would be supported by evidence of Gwinn's reputation for being prejudiced against persons and pilots not born in the United States,[3] and further bolstered by the prior training incident in which Gwinn subjected Afzal to ridicule by refusing to call him by his given name, instead referring to Afzal as "Tom" or "Joe."

Of course, even direct evidence of workplace animus is insufficient, standing alone, to withstand an employer's motion for summary judgment. There must also be evidence permitting a reasonable juror to conclude that Gwinn's animus toward Afzal played an "actual role" in ACA's termination decision. Fuller v. Phipps , 67 F.3d 1137, 1142 (4th Cir. 1995); see 42 U.S.C. § 2000e-2(m) (employers liable under Title VII if national origin "was a motivating factor for any employment practice, even though other factors also motivated the practice").

_____

tem Servs., 134 F.3d 1222, 1228 (4th Cir. 1998). Once the complainant has produced sufficient proof of each of the four elements of a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. McDonnell Douglas, 411 U.S. at 802.

[3] According to the affidavit of Captain Mark Barsnick, a pilot for ACA, Gwinn "has a reputation for being prejudiced against persons and pilots whose national origin is not the United States, as well as being a personally abusive instructor."

5

The parties acknowledge that Afzal could not have been discharged from his employment with ACA for failing recurrent training only twice. Moreover, it is undisputed that Afzal would not have been subjected to retraining with either Ballack or Peek had he received a passing grade from Gwinn. Plainly, then, if Afzal in truth performed adequately on the first oral exam -- failing it only because of Gwinn's prejudice -- animus on account of Afzal's national origin played an actual role in the termination decision, and Afzal should prevail on his claim.[4]

ACA nonetheless contends that Afzal's subsequent failures of the oral exams administered by Ballack and Peek cured any defects that Gwinn may have introduced into the testing process. We cannot accept ACA's proposition to be correct as a matter of law, although it is true that a jury could reasonably conclude against Afzal and decide, on the basis of his second and third failures, that Afzal failed the first exam on its merits.

But a jury also could reasonably conclude in Afzal's favor, and determine that he should have been given a passing grade on the first exam. Such a jury conclusion would be firmly premised on (1) the evidence of Gwinn's animus; (2) the subjective nature of the exam and Gwinn's failure to document Afzal's alleged deficiencies; and (3) the evidence -- direct and circumstantial -- casting doubt on the validity of the second and third exams.

_____

[4] Employers may be held liable under Title VII for the acts of their employees entrusted with decisionmaking authority, as long as those acts are committed within the scope or apparent scope of the wrongdoer's employment. See Martin v. Cavalier Hotel Corp. , 48 F.3d 1343, 1351-53 (4th Cir. 1995) (principles of common law agency dictated employer's liability for actions of supervisor in Title VII action for sexual harassment and constructive discharge); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994) (noting similarity between Title VII and the Age Discrimination in Employment Act, insofar as both impose liability on employers for discriminatory personnel actions taken by their agents). Although Gwinn did not make the ultimate decision to terminate Afzal, the evidence would permit a conclusion that Afzal could not have been terminated absent an abuse of Gwinn's decisionmaking authority.

6

The true motive behind Gwinn's decision to fail Afzal on the first exam is quintessentially a jury issue, the resolution of which will depend to no small degree on the jurors' opportunity to observe Gwinn's demeanor on the witness stand and evaluate his credibility. Where the resolution of the case is likely to turn on the credibility of the witnesses, summary judgment is simply not appropriate. Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991); see United States v. Burgos, 94 F.3d 849, 868 (4th Cir. 1996) (en banc) ("Determining credibility of witnesses and resolving conflicting testimony falls within the province of the factfinder, not the reviewing court.") (citation omitted). It must be left to a jury to decide the genuine issue of Gwinn's motivation as it relates to the material fact of Afzal's actual performance on the first examination.**5**

III.

The judgment of the district court is vacated, and the case is remanded for trial.

VACATED AND REMANDED

LUTTIG, Circuit Judge, dissenting:

In late 1993, appellant took and failed two oral examinations for upgrade from the rank of First Officer to Captain. In 1995, after he had attained that higher rank, appellant took and failed three consecutive oral proficiency examinations given by three separate examiners. Notwithstanding these five failures on oral examinations administered by five different pilots, all but a single one of which are incontestable, the majority would force a trial on the question whether appellant "actually" failed the only one of the five exams with respect to which he has forecast any evidence at all of discriminatory intent. I would hold that appellant's failures on his second oral proficiency examination, administered by Captain Ballack, and his third, administered by Cap-

_____

**5** Because we hold that the district court erroneously granted summary judgment to ACA in the face of direct, probative evidence of discrimination, we need not address Afzal's alternative argument that the court below misapplied the McDonnell Douglas model, relating to claims grounded in circumstantial evidence.

7

tain Peek and observed at appellant's request by a union representative, severed any "but-for" relationship between Gwinn's alleged discrimination and appellant's subsequent termination. See, e.g., Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 (7th Cir. 1997) ("[W]hen the causal relationship between the subordinate's illicit motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and a legally permissive basis, the bias of the subordinate is not relevant."). In the face of these multiple, independent confirmations, untainted by any suggestion of discrimination, of appellant's inability to satisfy FAA proficiency requirements, the majority would allow a jury to determine that appellant is nonetheless "actually" qualified to fly passenger planes. Like Judge Brinkema, I would not. Accordingly, I dissent.

8