**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-2320**

───────────

KIRBY B. MCZEKE,

             Plaintiff - Appellant,

        v.

HORRY COUNTY,

             Defendant - Appellee.

───────────

Appeal from the United States District Court for the District of South Carolina, at Florence.  R. Bryan Harwell, District Judge. (4:10-cv-02944-RBH)

───────────

Argued:  January 27, 2015            Decided:  May 1, 2015

───────────

Before WILKINSON, KING, and DUNCAN, Circuit Judges.

───────────

Affirmed by unpublished opinion.  Judge Duncan wrote the majority opinion, in which Judge Wilkinson joined.  Judge King wrote a dissenting opinion.

───────────

**ARGUED:** Julius Wistar Babb, IV, J. LEWIS CROMER & ASSOCIATES, L.L.C., Columbia, South Carolina, for Appellant.  Mark W. Buyck, III, WILLCOX, BUYCK & WILLIAMS, P.A., Florence, South Carolina, for Appellee.  **ON BRIEF:** J. Lewis Cromer, J. LEWIS CROMER & ASSOCIATES, L.L.C., Columbia, South Carolina, for Appellant.

───────────

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Kirby McZeke, an African-American woman, is a former employee of the Magistrate's office in Horry County, South Carolina. She filed this action pursuant to Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. §§ 2000e et seq.) ("Title VII"), alleging that Mark Harris, Magistrate Judge, unlawfully terminated her employment on the basis of her race. The district court granted summary judgment in favor of the County, and McZeke appealed. Finding no error, we affirm.

I.

McZeke served as an administrative assistant to the Horry County Magistrate Judge for over twenty years without incident. Shortly after becoming Magistrate Judge and McZeke's supervisor on July 1, 2008, however, Judge Harris initiated disciplinary proceedings against McZeke for, among other things, "divulg[ing] information on a General Sessions Bench Warrant to the defendant." J.A. 29. We draw the following facts from McZeke's narrative.

In June 2008--before Judge Harris became the Magistrate-- police officer Matthew Stevenson informed McZeke that he had an outstanding arrest warrant for Don Herring. On learning that McZeke expected Herring to visit the Magistrate's office on

2

another matter, Stevenson asked her to do three things: alert him when Herring arrived; inform Herring of the warrant for his arrest; and hold Herring until Stevenson got there. McZeke did only one of those things. Because McZeke was preparing to leave for the day when Herring appeared at the Magistrate's office, she did not inform Stevenson of Herring's arrival. Rather, she told Herring that there was an outstanding warrant for his arrest and that Officer Stevenson had asked her to hold Herring in her office until Stevenson arrived to serve the warrant. She further said that she did not have "holding power" and could not ask Herring to wait, so she advised him to visit the Solicitor's office the next morning. She never informed Stevenson of her conversation with Herring, and Herring did not go to the Solicitor's office the following morning. Nearly two months later, Officer Stevenson found Herring under a bed in his home and arrested him there.

Having learned of the incident with Herring, on September 25, 2008, Judge Harris issued a disciplinary report citing McZeke for, in relevant part, "[d]ivulging or misusing confidential information," and suspended her for two days.[1] J.A.

---

[1] Judge Harris also reprimanded McZeke for, in an unrelated incident, "[t]he use of abusive language towards a fellow employee or member of the general public while performing official duties as a County employee." J.A. 28. In response, (Continued)

28. The report stated that "McZeke divulged information on a General Sessions Bench Warrant to the defendant" and provided that if a similar incident were to occur again, the consequence would be "TERMINATION." J.A. 29. Roughly seven months later, McZeke again divulged information regarding an unserved arrest warrant, this time to a defendant's mother, who was a personal friend.

In April 2009, Officer Bernard Grate, after conducting an investigation of a drug-related offense with a confidential informant, obtained an arrest warrant for Anton Graham. Officer Grate discussed the warrant with McZeke because they both knew Graham's family personally. In fact, McZeke later testified in a deposition that Graham's mother, Johnnie Mae Graham, "is [her] best friend." J.A. 53.

McZeke prepared the arrest warrant for Graham on April 20, 2009. Early the following morning, Officer Grate and others attempted to serve the warrant on Graham at his mother's house but did not find him there. Mrs. Graham called McZeke later that morning and asked her "in confiden[ce]" why there was a warrant for her son. J.A. 59. McZeke testified that she "told her it was a drug warrant." J.A. 59. While Anton Graham

---

McZeke acknowledged the incident and stated: "I'm in agreement w[ith] the abusive language suspension." J.A. 29.

4

remained at large, the confidential informant who assisted Officer Grate in his investigation of Graham telephoned Officer Grate to say that Graham had contacted him, asking what he knew about the warrant and accusing him of assisting law enforcement.

Judge Harris took steps to end McZeke's employment because of her action. He first offered her the option to resign so as not to foreclose the possibility of future employment with Horry County. When McZeke informed Judge Harris that she would not voluntarily resign, he presented her with a termination letter. Several months later, Judge Harris hired a white woman to replace McZeke.

In November 2010, McZeke filed a complaint against Horry County alleging that Judge Harris fired her for racially discriminatory reasons. Horry County moved for summary judgment, arguing that McZeke had failed to establish a prima facie case of race discrimination because she failed to show that she was meeting Judge Harris's legitimate expectations. The magistrate judge recommended denying Horry County's summary judgment motion on the grounds that "issues of fact exist as to whether Judge Harris ever communicated to [McZeke] . . . his expectations" regarding her employment, and "the reason for [McZeke's earlier] suspension was somewhat vague." J.A. 278.

The district court rejected the Magistrate Judge's recommendation and granted summary judgment in favor of Horry

5

County.  The court held that McZeke could not establish a claim of discriminatory termination based on race because she could not establish that, at the time of her termination, she was meeting the legitimate expectations of her employer.  The court reasoned that the disciplinary report had put McZeke on notice that Judge Harris expected her not to divulge information regarding bench warrants, and despite that notice, McZeke "plainly acknowledged divulging information regarding [the] bench warrant" for Graham.  McZeke v. Horry Cnty., No. 4:10-cv-02944-RBH, 2013 WL 5434082, at *3 (D.S.C. Sept. 27, 2013).  McZeke now appeals that decision.

## II.

The sole question before us is whether McZeke was meeting the legitimate expectations of her employer when she was fired.[2]

---

[2] Because McZeke did not offer direct evidence of discrimination, she had to make out a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Holland v. Washington Homes, Inc., 487 F.3d 208, 213–14 (4th Cir. 2007).  To make out such a case, she had to show that (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing her job duties at a level that met her employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class.  Id. at 214 (citing McDonnell Douglas Corp., 411 U.S. at 802).  The parties did not below, and do not now dispute that McZeke established the first, second, and fourth prongs of her prima facie case.  Therefore, the district court's review was limited to the third prong--
(Continued)

6

We have no difficulty concluding on these facts that she was not. McZeke does not dispute that Judge Harris had the authority to fire her. She does not dispute that on September 25, 2008, Judge Harris issued a disciplinary report against her in writing, which warned her not to divulge information about bench warrants. And, McZeke does not dispute that seven months later, she did precisely that: she disclosed information on a bench warrant by informing her best friend that the arrest warrant for her friend's son was for a drug-related offense. Even viewing these facts in the light most favorable to McZeke, she was not fulfilling Judge Harris's expectations when she was terminated.

In addition, the legitimacy of Judge Harris's expectation that McZeke keep warrant information confidential is confirmed by the facts. McZeke's disclosure may have caused tangible harm: after she shared the information about the Graham warrant, Graham contacted the confidential informant and accused him of assisting the police. Even if Judge Harris had not explicitly warned McZeke against divulging warrant information, he might well have been justified in terminating her employment because

whether McZeke was meeting Judge Harris's legitimate expectations when he fired her. Our review is also so limited, and we consider the question de novo. See Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

7

she endangered the confidential informant by disclosing that the arrest warrant was drug-related.

McZeke's arguments to the contrary are inapposite. She contends that "the language of the Disciplinary Report for the suspension d[id] not provide . . . notice of Judge Harris's expectations." Appellant's Br. at 11. The report speaks for itself. It cited her for "[d]ivulging or misusing confidential information," and it explained that McZeke had done so by "divulg[ing] information on a General Sessions Bench Warrant to the defendant." J.A. 28–29.

McZeke also argues that her performance would have met the legitimate expectations of a former supervisor. See Appellant's Br. at 27. This argument fails because "[i]t is the perception of the decision maker which is relevant" when determining whether a plaintiff's job performance met her employer's legitimate expectations. Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Our precedent in Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006), confirms our view that McZeke failed to meet Judge Harris's legitimate expectations. In that case, we found that the plaintiff failed to show that he was meeting his employer's legitimate expectations, id. at 518, where the employer had previously reprimanded the plaintiff "based on

8

concrete, specific observations," id. at 517, and the plaintiff continued to perform contrary to those expectations, id. at 512–13. Having failed to heed Judge Harris's legitimate expectations and written warning not to divulge warrant information, McZeke cannot establish a prima facie case of discriminatory discharge under Title VII.

## III.

For the foregoing reasons, the grant of summary judgment to Horry County on McZeke's Title VII claim is

AFFIRMED.

KING, Circuit Judge, dissenting:

With all respect for my good friends in the panel majority, I am entirely unconvinced that this Title VII race discrimination case is as black and white as the majority suggests. Viewing the facts in the light most favorable to McZeke, a reasonable jury could readily conclude that McZeke was terminated because of her race. In these circumstances, I am satisfied to adopt the well-crafted Report and Recommendation of the federal magistrate judge denying summary judgment to Horry County. See McZeke v. Horry Cnty., No. 4:10-cv-02944 (D.S.C. Aug. 8, 2013), ECF No. 70. I would therefore vacate and remand for further proceedings, that is, a jury trial on the merits.

I respectfully dissent.