Steven C. BALAZS, Plaintiff–Appellant,

v.

Jacque LIEBENTHAL; Frankie Collins–Brooks; American Telephone & Telegraph Company, Incorporated, Defendants–Appellees.

Equal Employment Opportunity Commission, Amicus Curiae.

No. 93–2403.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1994.

Decided Aug. 19, 1994.

**ARGUED:** Candace Smith McCall, Anderson & Corrie, Fairfax, VA, for appellant. Stephen William Robinson, McGuire, Woods, Battle & Boothe, Washington, DC, for appellees. **ON BRIEF:** Scott E. Snyder, Anderson & Corrie, Fairfax, VA, for appellant. Arlene Paul, McGuire, Woods, Battle & Boothe, Washington, DC, for appellees. James R. Neely, Jr., Deputy Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vincent J. Blackwood, Asst. Gen. Counsel, and Lamont N. White, Office of Gen. Counsel, E.E.O.C., Washington, DC, for amicus curiae.

Before MICHAEL, Circuit Judge, MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion. Senior District Judge DUPREE wrote the opinion, in which Judge MICHAEL and Senior District Judge MacKENZIE joined.

## OPINION

DUPREE, Senior District Judge:

In this appeal from summary judgment dismissing plaintiff's employment discrimination action based on sex brought by him pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), against his employer, American Telephone and Telegraph Company (AT & T), and two of his fellow employees, the principal issues to be decided are whether the complaint states a cause of action based on sex discrimination and whether the attempted amendment of plaintiff's charge filed with the Equal Employment Opportunity Commission (EEOC) long after this suit was instituted in order to supply the statutorily required verification by oath or affirmation served to perfect the charge of retaliation and thus support the maintenance of the action. Finding that each of the issues should be answered in the negative, the district court dismissed the sex discrimination and retaliation claims and dismissed without prejudice the four remaining pendent state claims alleged in the complaint. We find no error in these rulings, and in view of the statement in plaintiff's brief that he seeks no affirmative relief against the individual defendants, we will treat the action as one against AT & T alone.

The controversy between Balazs and AT & T has had a rather tortuous procedural history. In his complaint filed July 21, 1993 plaintiff alleges that he had been employed by AT & T for twenty-two years during which time he had risen to the rank of Metrics Analysis Supervisor; that on or about October 7, 1992 defendants circulated among his fellow employees and others

> several oral statements, certain in particularity, false, scandalous, and defamatory matter of and concerning plaintiff, to the effect that plaintiff was guilty of sexual harassment of co-workers, that he had created a hostile working environment, and that plaintiff was being disciplined for same, arising from a single incident a skit presented at a company picnic wherein plaintiff presented a "silver rocket award" to a female employee for fast typing and clerical skills. The rocket was alleged days later to resemble male anatomy by [defendants] Jacque Liebenthal and Frankie Collins–Brooks. They further alleged over a period of days that they were offended, and, as women managers, they insisted that they were the victims of sexual harassment and demanded that plaintiff be punished.

The complaint goes on to allege that "[a]t the time these statements were written or stated, no sexual harassment had taken place;" that AT & T after making an "EEO investigation" stated that "the plaintiff was never found guilty or accused of sexual harassment ... and refused to take action to reverse or retract these defamatory statements of sexual harassment;" that "[p]laintiff was so upset from the outrageous attack on his reputation as a business person that he was required to seek medical assistance;" that his family doctor prescribed sedatives and recommended that he seek professional counseling; that plaintiff "was removed from work on his doctor's orders, due to the extreme stress, anxiety, and anguish that he suffered as a result of the attack on his character;" that he was treated by a clinical psychologist and seen by a psychiatrist; and that "[s]ubsequent to plaintiff's leave of absence due to disability defendant (sic) filed his first charge of discrimination based on the false claim that he had sexually harassed employees."

On October 17, 1992 plaintiff filed with the EEOC a charge of discrimination based on sex in which it was stated:

> I have worked for the above named Respondent since March 1972. I was demoted from my position the supervisor of the metrics group on October 7, 1992.

> My manager informed me that my demotion was due to a charge of sexual harassment.

> I believe that I have been discriminated against because of my sex, male, in violation of Title VII of Civil Rights Act of 1964, as amended.

On the basis of this charge which was given the number 100930070 the EEOC issued to plaintiff on November 3, 1992 a right to sue letter. However, plaintiff neglected to file suit within ninety days thereafter as required by the statute, and that charge therefore lapsed.

The complaint further alleges that following a visit to his psychiatrist in March 1993 plaintiff was ordered by AT & T to return to work, and he did so in a position to which he had been demoted notwithstanding his doctors and a psychiatrist hired by AT & T had recommended that he return to work in his original position.

Under date of March 30, 1993 plaintiff's attorney addressed a letter to the EEOC in which it was stated:

This letter is to request that Steven Balazs be allowed to file a second and new charge of retaliation under Title VII of the Civil Rights Act of 1964, as amended, against his employer AT & T. We have reason to believe that Mr. Balazs was retaliated against as a direct consequence of his courage to file the original charge of sexual harassment which was obtained on October 17, 1992.

\* \* \* \* \* \*

We respectfully ask that you allow Mr. Balazs to file a charge of retaliation, and that we be issued a Notice and Letter of Right to Sue. It will spare the Commission and Mr. Balazs considerable time and expense in resolving this issue.

The EEOC accepted this letter as a new charge, gave it a number, 100 93 0751, and on May 21, 1993 issued to plaintiff its right to sue letter which contained these statements:

This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in your charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST. Less than 180 days have expired since the filing of this charge, but I have determined that the Commission will be unable to complete its process within 180 days from the filing of the charge.

With the issuance of this Notice of Right to Sue, the Commission is terminating its process with respect to this charge.

Reminded by plaintiff's attorney in a letter dated May 25, 1993 that the right to sue letter had not been accompanied by "a copy of the charge," the EEOC replied under date of June 15, 1993 that

When your client entered this office, he requested that the letter [of March 30, 1993] he presented serve as his Charge of Discrimination. That is the only record on file as an additional charge submitted by your client. I am enclosing a copy for your records.

It will be observed that the plaintiff at that time had not complied with the requirement of 42 U.S.C. § 2000e–5(b) which provides that "[c]harges shall be in writing under oath or affirmation . . . ." Compliance with this statute has been held to be mandatory in this circuit. *Equal Employment Opportunity Commission v. Appalachian Power Company, Inc.*, 568 F.2d 354 (4th Cir.1978).

Nevertheless, plaintiff, while continuing to work for AT & T in "the demoted position," filed this action on July 21, 1993 setting forth six causes of action based on (1) defamation by AT & T; (2) defamation by the individual defendants; (3) discrimination based on sex; (4) "Retaliation for Complaining of False Sexual Harassment Claim, and for Filing Charges with the EEOC;" (5) intentional infliction of emotional distress; and (6) "Constructive Discharge Resulting from Defamation and Sexual Harassment." In addition to the usual prayers for injunctive relief the complaint alleges actual damages of $2,000,-000 and punitive damages of $300,000.

On September 2, 1993 defendants filed a motion to dismiss and/or for summary judgment as to the first four causes of action alleged in the complaint and a memorandum in support of the motion. Counts I and II relating to the allegations of defamation are challenged on the grounds of lack of specificity. Counts III and IV, the ones with which we are here concerned, are challenged principally on the grounds that they do not allege in Count III, the sex discrimination claim, that plaintiff was treated differently because

of his sex and that Count IV, the retaliation claim, is barred because plaintiff did not timely file this claim under oath or affirmation before obtaining the right to sue letter and instituting this suit.

### THE SEX DISCRIMINATION CLAIM

For at least two reasons the district court was clearly correct in dismissing the sex discrimination claim which plaintiff attempted to allege in Count III of the complaint. First, even if the first charge filed by plaintiff with the EEOC on October 17, 1992 ("[m]y manager informed me that my demotion was due to a charge of sexual harassment") can by some stretch of the imagination be construed as a charge that plaintiff was discriminated against because he was a male, and the right to sue letter issued thereon authorized the filing of a sex discrimination suit, admittedly this action was filed long after the expiration of the ninety days within which suit was required to be brought under 42 U.S.C. § 2000e–5(f)(1). *See Harvey v. City of New Bern Police Department,* 813 F.2d 652 (4th Cir.1987).

Second, the complaint is devoid of any allegation that plaintiff was discriminated against because of *his* sex. Rather, following numerous allegations of slander and defamation resulting from the allegedly false accusations that plaintiff had sexually harassed his co-workers, Count III of the complaint simply alleges that

(62) By the above acts, defendants, jointly and severally have violated Title VII by discriminating against plaintiff because of his sex in the terms, conditions, and privileges of his employment.

Nowhere in any of the several charges filed by plaintiff with the EEOC or in his complaint is it alleged that he was treated differently from any other employee, male or female, because of his sex. An allegation that he was falsely accused of conduct which, if true, might have given rise to a claim of employment discrimination based on sex by someone else in no way states a cause of action that plaintiff himself was a victim of discrimination based on his sex. Perhaps this accounts for the fact that following receipt from the EEOC of the right to sue

letter in November 1992 plaintiff did not bring an action in the federal court based on sex discrimination but chose rather to sue AT & T in the Virginia state court for defamation and libel which action, we were told by counsel on oral argument, was later dismissed.

### THE RETALIATION CLAIM

Resolution of the issue posed by the retaliation claim requires consideration of the following additional facts.

After the defendants had filed their motion to dismiss on September 2, 1993 the plaintiff filed on September 10, 1993 a third claim of employment discrimination with the EEOC on a standard form which he signed under the penalties of perjury. Alleging that the cause of the discrimination complained of was retaliation, the particulars were stated as follows:

I. On October 19, 1992, I filed a charge of discrimination against my employer. Prior to filing a charge, I was informed that I was highly rated and number one on the promotion list. On or about April 15, 1993, I was given a low performance evaluation rating and denied a salary increase.

II. I have not been given a reason for the company's actions.

III. I believe that I was discriminated against in violation of section 704(a) of the Civil Rights Act of 1964, as amended.

This charge was given a new claim number, 100 93 1424, and although it does not appear on the record, we were told on oral argument that a right to sue letter was issued on this charge and that plaintiff instituted a suit thereon in the Eastern District of Virginia which suit was later dismissed. It will be noted that the charge itself refers to a discrete incident which occurred on April 15, 1993 after the charge contained in counsel's letter of March 30, 1993 with which we are concerned here and that it makes no mention of an intent to amend the March 30, 1993 charge.

Five days after filing this second charge of retaliation plaintiff filed with the EEOC on September 15, 1993 in the first charge of retaliation, it being No. 100 93 0751, a sworn

affidavit in which it was stated "that all of the statements made by my attorney ... in her March 30, 1993, letter ... are true and accurate to the best of my knowledge and belief."

Three days before the scheduled hearing on defendants' motion to dismiss plaintiff on September 27, 1993 filed an affidavit in this action in which he stated that:

> On March 30, 1993, I affirmed to the receiving EEOC officer, Cornelius Sheppard, that the contents of the aforementioned letter dated March 30, 1993, are true and accurate to the best of my information and belief. On March 30, 1993, the receiving EEOC officer, Cornelius Sheppard, accepted the aforementioned letter dated March 30, 1993, and Cornelius Sheppard informed me that the March 30, 1993, letter was sufficient filing of a charge of discrimination.

There is no record of any such affirmation. In its letter to plaintiff's attorney dated June 15, 1993 heretofore quoted the EEOC stated that the March 30 letter "is the only record on file as an additional charge submitted by your client," and in the amicus brief filed by leave of court by the EEOC in this action it is simply stated that "[a]lthough the March 30 letter was not verified when it was originally filed, plaintiff submitted an affidavit to the EEOC on September 15, 1993, attesting to the veracity of the allegations in the letter." (P. 6 of Amicus Brief.)

At the hearing conducted by the district court on October 1, 1993 at the conclusion of which the action was dismissed counsel for plaintiff had argued that plaintiff's affidavits of September 15 and September 27, 1993 sufficed to show that plaintiff had complied with the verification requirement of the statute, but he had not mentioned that the charge of retaliation filed September 10, 1993 was also intended as an amendment to the March 30, 1993 charge. That claim was first made, apparently as an afterthought, in plaintiff's motion to reconsider filed in this action on October 6, 1993. Significantly, in its amicus brief the EEOC makes no such claim.

Following the briefing of plaintiff's motion to reconsider by the parties the district court

by a short order filed October 25, 1993 denied the motion, and on October 27, 1993 plaintiff appealed "from the order dismissing with prejudice counts three (3) and four (4) in Plaintiff's Complaint, entered in this action on the first day of October 1993."

■ On appeal the plaintiff maintains that a charge of discrimination does not require verification, but that even so, an unverified charge may be cured by amendment and that the actions taken by him in this case served to cure the deficiency. As to the verification requirement the statute clearly states that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). In this circuit failure to comply with this statute is fatal to an action seeking relief under Title VII. *EEOC v. Appalachian Power, supra.*

> Like the court below, we note that Section 706(b) of the Act, as amended, 42 U.S.C. § 2000e–5(b) is cast in mandatory terms.... We have previously held the requirements of § 706(b) of the Act to be mandatory, *Patterson v. American Tobacco Co.*, 535 F.2d 257, 271–272 (4th Cir. 1976), and see no reason to ignore the plain language that Congress has enacted.

*Id.* at 355. In that case based on an unsworn charge the district court's judgment of dismissal was affirmed.

The district courts have consistently followed this decision. *See Hinton v. C & S/Sovran Corporation,* 57 F.E.P. Cases (BNA) 337 (E.D.Va.1991) (unsworn letter from plaintiff's lawyer to EEOC within 180 days of his discharge was not cured by sworn charge executed by plaintiff after 180 days had elapsed); and *Austin v. Russell County School Board,* 53 F.E.P. Cases (BNA) 1749, 1990 WL 300259 (W.D.Va.1990) ("[t]he provisions of § 2000e–5(b) plainly and simply mandate that a charge be in writing and under oath," citing *Appalachian Power* ).

■ It having been thus established that the filing of a sworn charge of discrimination with the EEOC is a mandatory prerequisite to the validity of the charge, there is presented squarely for decision here the question of

whether the attempted amendment of plaintiff's March 30, 1993 charge sufficed to perfect it and support the maintenance of this action notwithstanding the attempted amendment was not filed until almost four months after the EEOC had issued plaintiff its right to sue letter, had terminated its processing of the charge, this action had been instituted and defendants had filed and served plaintiff with a motion to dismiss based on the non-verification of the EEOC charge.

Although cases based on Title VII are "[t]hick as autumnal leaves that strew the brooks in Vallombrosa," * our attention has been called to no case which addresses this precise question. Plaintiff, joined by the EEOC in its amicus brief, relies principally on an EEOC regulation, 29 C.F.R. § 1601.-12(b) (1988). He argues that the charge filed by him on March 30, 1993 was timely amended, that the amendment related back to the filing of the charge and that the district court's ruling to the contrary was clearly erroneous. The cited regulation states:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

It has been held that this regulation is valid and is not contrary to the statute requiring verification of charges. *Peterson v. City of Wichita,* 888 F.2d 1307, 1308–09 (10th Cir.1989). Although the regulation has heretofore been applied in many cases, not one of them involved a situation where, as here, the attempted amendment followed the issuance of a right to sue letter and the institution of suit.

Plaintiff and the EEOC agree that the purpose of verification is to protect the employer from having to respond to frivolous charges, but that protection is lost once the

right to sue letter issues and the employer is served with a lawsuit. At that point the employer's only choice is to defend the suit even if it is, as appears to be the case here, based at least in part on a charge not covered by Title VII. Carried to its logical conclusion, under the EEOC's interpretation of its regulation it would never be too late to verify a charge, and if this case had gone to trial and had resulted in a judgment from which appeal was taken, plaintiff's verification of his charge would have been timely if made while the case was pending in this court.

Such an absurd result was surely not what Congress had in mind when it enacted the statute nor what the EEOC had in mind when it adopted the regulation allowing a verification amendment to relate back to the time the charge was filed.

■ Thus we conclude that a reasonable construction of the EEOC's regulation would simply allow charges to be verified and to relate back only so long as the charge is a viable one in the EEOC's files, but that where, as here, a right to sue letter has issued, a suit has been instituted and the EEOC has closed its file, there is no longer a charge pending before the EEOC which is capable of being amended. This construction of the regulation imparts certainty to the proceeding which is helpful to the parties and the court, and at the same time it complies with the statutory requirement of verification without undermining the EEOC regulation.

The EEOC's actions in this very case lend validity to this view. Having closed its file on the charge contained in the letter of plaintiff's counsel dated March 30, 1993, upon receipt of plaintiff's charge filed September 10, 1993, the EEOC, instead of accepting it as a relating back amendment to the charge on which it had already closed its file, opened a new file, assigned it a new claim number and issued plaintiff a third right to sue letter on which we are told on oral argument plaintiff instituted yet another civil action against

---

* Milton, *Paradise Lost,* Book I, Lines 302–03. The quotation was first used in a judicial opinion by Justice (later United States Senator) Sam J. Ervin in which he referred to the superabundance of automobile accident cases in *Penn Dixie Lines, Inc. v. Grannick,* 238 N.C. 552, 555, 78 S.E.2d 410, 413 (1953).

defendant which action has now been dismissed.

And in its amicus brief the EEOC concedes, at least implicitly, that an amendment which prejudices the employer should not be allowed.

> Allowing a charging party to amend his charge to add a verification at a later time does not undermine the purpose of the verification requirement *as long as it occurs before the employer has been required to defend against an unverified charge.* (Emphasis supplied.)

Amicus Brief at p. 8.

■ The EEOC goes on to argue that since defendant was not required to respond to plaintiff's unverified charge, it was not prejudiced. Had the proceedings stopped at that point, this statement would certainly be true, but the cases cited by amicus in support of this assertion such as *Equal Employment Opportunity Commission v. Sears, Roebuck and Co.,* 650 F.2d 14 (2d Cir.1981), *Price v. Southwestern Bell Telephone Company,* 687 F.2d 74 (5th Cir.1982), and *Weeks v. Southern Bell Telephone & Telegraph Company,* 408 F.2d 228 (5th Cir.1969), all involve situations where the verification defect was cured before any suit was brought. To say that an employer served with a lawsuit based on an unverified charge who has to employ counsel, file an answer and a motion to dismiss and appear in court to argue the motion has not been prejudiced is just plain wrong. Defendant here may well have welcomed the opportunity to respond to the charge and engage in efforts at conciliation as contemplated by the statutes, but it was never given this chance.

■ Even if it be assumed, however, that plaintiff's attempted amendment of the retaliation charge of March 30, 1993 served to breathe life into it notwithstanding the EEOC had long since closed its file, there remains the serious question of whether the filing with the EEOC of a charge not covered by Title VII will suffice to support an action for retaliation against an employer who thereafter discriminates against the employee for having filed the non-covered claim. The few cases found in this and other circuits which address the question have answered it in the negative.

■ It will be remembered that in the charge filed by plaintiff with the EEOC on October 17, 1992 which forms the basis of plaintiff's retaliation claim in this action he simply stated that he had been informed that his demotion was "due to a charge of sexual harassment" and that "I believe that I have been discriminated against because of my sex, male." In his complaint filed in this action plaintiff alleges that "his first charge of discrimination [was] based on the false claim that he had sexually harassed employees" (Complaint ¶ 32, J.A. 12). Such an action by an employer is not one proscribed by Title VII which provides in 42 U.S.C. § 2000e-2(a) that:

> It shall be an unlawful employment practice for an employer-
>
> > (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;....

And the retaliation statute, 42 U.S.C. § 2000e-3(a) provides in pertinent part that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a claim of retaliation under this statute a plaintiff must show that he opposed an unlawful employment practice or participated in a charge or other proceeding under Title VII; that he has suffered an adverse employment action; and that there is a causal connection between the two. It is further generally held that to sustain a suit for retaliation it is not necessary that the plaintiff prove that the underlying claim of discrimination was true, *Mitchell v. Visser,* 529 F.Supp. 1034, 1043 (D.Kan.1981); *Rogers v. McCall,* 488 F.Supp. 689, 697 (D.D.C.1980);

and *United States v. University of Maryland,* 438 F.Supp. 742, 758 (D.Md.1977), and we subscribe to that view. That is not the case we have here, however. In this case the plaintiff's claim as first filed with the EEOC simply alleged that he had been accused of doing something—sexually harassing his co-workers—which he did not do. It had nothing to do with his race, color, religion, sex or national origin. The EEOC had no more jurisdiction of this claim than it would have had of a charge that defendant had falsely accused him of reckless driving in the company parking lot.

Language in the cases which have dealt with the problem in factually similar situations is instructive. In *Crowley v. Prince George's County, Maryland,* 890 F.2d 683 (4th Cir.1989), plaintiff alleged that his position was downgraded in retaliation for his having been involved in the investigation of racial harassment claims against defendant's police department.

> He contends that this states a claim for discriminatory retaliation in violation of 42 U.S.C. § 2000e–3. We disagree. Section 2000e–3 forbids discrimination against an employee "because he has opposed any practice *made an unlawful employment practice* by this subchapter, or because he has ... participated in any manner in an investigation, proceeding, or hearing under this subchapter." ([E]mphasis added.) Crowley complains, however, not that he has been retaliated against for investigating discriminatory *employment* practices within the police department, but for investigating instances of racial harassment perpetrated by police officers against members of the community. Such a claim simply is not cognizable under Title VII.

It may be that the downgrading of Crowley's position by the chief of police was wrong or even spiteful. We have emphasized, however, that Title VII "is not a general 'bad acts' statute." *Holder v. City of Raleigh,* 867 F.2d 823, 828 (4th Cir. 1989). Rather, the conduct it prohibits is specifically set forth. To recognize Crowley's claim would be to authorize retaliation actions under Title VII for anyone whose job entails the investigation of any claim of discrimination against his or her employer, without regard to whether the claimed discrimination relates to a practice of employment.

In the *Holder* case cited in *Crowley* it is said at 867 F.2d 823, 825–26 that:

> [W]e do not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision. To hold that favoritism towards friends and relatives is *per se* violative of Title VII would be, in effect, to rewrite federal law. The list of impermissible considerations within the context of employment practice is both limited and specific: "race, color, religion, sex or national origin." We are not free to add our own considerations to the list.

And in *Learned v. City of Bellevue,* 860 F.2d 928, 932 (9th Cir.1988), we find this language:

> The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination, however, does not automatically trigger the protection afforded under section 704(a); the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII.... Thus, even if the filing of Title VII charges with a state agency such as the HRC could be construed as participation in an investigation, proceeding, or hearing under Title VII ... the HRC filing does not fall within the protection of 704(a) in this case because Learned did not allege discrimination prohibited by Title VII. Because Learned did not produce any evidence of, or even allege, a valid Title VII claim, we conclude that the district court properly granted summary judgment as to this claim.

We are thus drawn to the inescapable conclusion that plaintiff's retaliation claim in this action must fail, first, because the charge of retaliation filed by plaintiff was not timely verified as required by the statute, and second, the plaintiff's previous claim the filing of which was alleged to have given rise to the retaliation claim was not one cognizable un-

der Title VII of the Civil Rights Act of 1964. The judgment appealed from is

*AFFIRMED.*