**Leonard EDELMAN, Plaintiff–Appellant,**

v.

**LYNCHBURG COLLEGE,** **Defendant–Appellee.**

No. 99–2408.

United States Court of Appeals, Fourth Circuit.

Argued: June 8, 2000

Decided: Oct. 2, 2000

**ARGUED:** Elaine Charlson Bredehoft, Charlson Bredehoft, P.C., Reston, Virginia, for Appellant. Mary Virginia Barney, Alexander Bell, P.L.C., Lynchburg, Virginia, for Appellee. **ON BRIEF:** Kristine H. Smith, Edmunds & Williams, P.C., Lynchburg, Virginia, for Appellant. Alexander W. Bell, Alexander Bell, P.L.C., Lynchburg, Virginia, for Appellee.

Before WILKINS and LUTTIG, Circuit Judges, and BEEZER, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge BEEZER wrote the opinion, in which Judge WILKINS joined. Judge LUTTIG wrote a concurring opinion.

## OPINION

BEEZER, Senior Circuit Judge:

Leonard Edelman appeals the district court's dismissal of his employment discrimination action for lack of subject matter jurisdiction. This case presents an issue of first impression in this circuit: whether 29 C.F.R. § 1601.12(b), a regulation promulgated by the Equal Employment Opportunity Commission ("EEOC"), conflicts with the statutory requirements of Title VII of the Civil Rights Act, specifically 42 U.S.C. § 2000e–5(b) and 2000e–5(e)(1), to the extent that the regulation permits a charge of discrimination to be verified after the expiration of the applicable limitations period. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because we conclude that, so applied, the EEOC regulation is contrary to the plain language of the statute, we affirm the dismissal of Edelman's action on the grounds that he failed to file a timely charge of discrimination.

### I

Edelman, a white Polish–Jewish male biology professor, was denied tenure by Lynchburg College on June 6, 1997. On November 14, 1997, Edelman sent a letter to the EEOC alleging that he had been subject to "gender-based employment discrimination, exacerbated by discrimination on the basis of [his] family's national origin and religion." According to Edelman, Jacqueline Asbury, the Dean of the College, opposed his tenure because she wanted to improve the percentage of tenured women on the faculty. Edelman claims that Asbury ignored the uniform support of his department chairman, an ad hoc faculty committee, and the Faculty Personnel Committee. At the conclusion of his letter, Edelman wrote, "I hereby file a charge of employment discrimination against Lynchburg College (Dean Jacqueline Asbury, President Charles Warren and the Board of Trustees) and I call upon

the EEOC to investigate this case[.]" Edelman's letter was received by the EEOC on November 18, 1997.

On November 26, 1997, Edelman's attorney sent another letter to the EEOC that stated:

> Professor Edelman would like to have a personal interview with an EEOC investigator prior to the final charging documents being served on the college. It is my understanding that delay occasioned by the interview will not compromise the filing date, which will remain as November 14, 1997. Please advise if my understanding in this regard is not correct.
>
> \*    \*    \*    \*    \*    \*
>
> Finally, please have the investigator contact this office to schedule the interview at a mutually convenient time.

Shortly thereafter, the EEOC sent a letter to Edelman advising him that it needed additional information in order to investigate his case. The EEOC's letter urged Edelman to set up an interview "as soon as possible because a charge of discrimination must be filed within the time limits imposed by law[.]"

On February 17, 1998, the EEOC sent Edelman an appointment notice advising him that his interview was scheduled for March 3, 1998. The interview was conducted as scheduled. On March 18, 1998, the EEOC mailed a draft charge to Edelman for his signature. Edelman's verified charge of discrimination was filed with the EEOC on April 15, 1998—313 days after the date of alleged discrimination.

The EEOC did not assign a number to Edelman's case until after it received his verified charge. Approximately one week later, the EEOC forwarded the charge to both Lynchburg College and the Virginia Council of Human Rights ("VCHR"), the state agency authorized to seek relief from unlawful employment practices. After completing its investigation, the EEOC issued Edelman a right-to-sue letter on March 26, 1999.

Edelman initially filed this action in state court, alleging state law claims of wrongful termination, breach of contract, and intentional infliction of emotional distress. Lynchburg College removed the action to federal court after Edelman amended his complaint to assert a cause of action under Title VII, 42 U.S.C. §§ 2000e through 2000e–17. Lynchburg College then moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Because the district court concluded that Edelman failed to timely file his charge of discrimination, it granted Lynchburg College's motion, dismissed the Title VII claim, and remanded Edelman's remaining claims to state court. Edelman timely appeals.

## II

■ We review de novo a district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999).

■ In order to assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *See Taylor v. Virginia Union Univ.,* 193 F.3d 219, 239 (4th Cir.1999). Title VII establishes two potential limitations periods within which the discrimination charge must be filed with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); *see also Tinsley v. First Union National Bank,* 155 F.3d 435, 439 (4th Cir.1998). The basic limitations period is 180 days after the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1). The limitations period is extended to 300 days, however, in "deferral states." *See id.* § 2000e–5(e)(1).

A "deferral state" is one which has a state law "prohibiting the unlawful employment practice alleged" and a state or local agency authorized "to grant or seek relief" from the practice. *See id.* § 2000e–5(c). Virginia is a "deferral state." *See Tinsley,* 155 F.3d at 440. Accordingly, the

300–day limitations period applies to Edelman's Title VII claim.

## III

■ Edelman argues that the district court erred in dismissing his Title VII claim because his April 15, 1998 charge of discrimination related back to his November 14, 1997 letter and was thus timely filed within 300 days of June 6, 1997, the date of the alleged discrimination. Title VII states that charges of discrimination "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). The relevant EEOC regulation states that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

Edelman's letter was mailed to the EEOC within 300 days and sufficiently identified the parties and the alleged discriminatory action. However, the letter was not sworn to under oath or affirmation. Nevertheless, Edelman relies on the second sentence of the regulation, which provides that "[a] charge may be amended to cure technical defects or omissions, including the failure to verify the charge, or to clarify or amplify allegations made therein. Such amendments ... will relate back to the date the charge was first received." *Id.*

The parties agree that if the regulation is applied to Edelman's discrimination charge, the sworn-but-untimely charge relates back to his unsworn-but-timely letter and is thus timely filed. The parties disagree, however, as to whether the regulation may be so applied.

■ In order to answer this question, we must carefully consider the relationship between the regulation (Section 1601.12(b)) and the statute (Title VII, specifically 42 U.S.C. § 2000e–5(b) and 2000e–5(e)(1)).

We begin with the framework established by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984):

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778.

In *Robinson v. Shell Oil Co.*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the Court considered the *Chevron* framework in the specific context of Title VII. The Court made clear the standard by which we are guided:

> Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent."

*Id.* at 340, 117 S.Ct. 843 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

■ Step one of the *Chevron* analysis, as confirmed by *Robinson*, requires us to determine whether Congress has expressed its intent with respect to the issue at hand. In undertaking this analysis, we are mindful that "agency power is not the power to make law. Rather, it is the

power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Brown & Williamson Tobacco Corp. v. FDA,* 153 F.3d 155, 161 (4th Cir.1998) (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213–14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)) (internal quotation marks and other citations omitted).

The precise question at issue in this case is whether verification must occur within the statutory limitations period. "[T]he first place where we must look to see if Congress has spoken to the issue with which we are concerned and whether Congressional intent in that regard is clear is on the face of the statute." *Kofa v. INS,* 60 F.3d 1084, 1088 (4th Cir.1995). As we have earlier stated, "[s]tatutory construction must begin with the language of the statute." *Id.*

We conclude that Congress has unambiguously spoken on this issue. As noted above, the language of the statute itself requires that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). The plain meaning of this language compels the conclusion that if a discrimination claim is not in writing, under oath or affirmation, containing the information and in the form required by the Commission, it is not a charge.

In defining a charge, Congress chose to limit the EEOC's authority. While Congress expressly delegated to the EEOC the power to delineate the form and content of the charge, it did not give the EEOC authority to tamper with the oath or writing requirements. Nor did Congress give the EEOC authority to alter the limitations period. On the contrary, the statute affirmatively and plainly establishes the time period within which a charge must be filed. *See id.* § 2000e–5(e)(1).

██ Because a charge requires verification, *see id.* § 2000e–5(b), and because a charge must be filed within the limitations period, *see id.* § 2000e–5(e)(1), it follows that a charge must be verified within the limitations period. Thus, to the extent that the regulation permits a charge to be verified after the expiration of the limitations period, it thwarts the plain language of Title VII.

Having concluded that application of the EEOC's regulation in this case contravenes Congress's intent, as expressed through the plain language of the statute, we need not proceed further. Step two of the *Chevron* analysis does not come into play, and we do not apply the EEOC regulation. *See Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."); *see also Brown & Williamson,* 153 F.3d at 161 ("It is only if the intent of Congress is ambiguous that we defer to a permissible interpretation by the agency.").

The Supreme Court has long adhered to the rule that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778. *See, e.g., FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981) ("[Courts] must reject administrative constructions of the statute, whether reached by adjudication or by rule–making, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement."); *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965) ("Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such adminis-

trative decisions."); *Webster v. Luther*, 163 U.S. 331, 342, 16 S.Ct. 963, 41 L.Ed. 179 (1896) ("But this court has often said that it will not permit the practice of an executive department to defeat the obvious purpose of a statute").

Likewise, this circuit has refused to defer to agency interpretations that are contrary to the statute at issue. *See, e.g., In re Apex Express Corp.*, 190 F.3d 624, 641 (4th Cir.1999) ("Here, there is no ambiguity in the text of the statute to justify the [agency's] position or a turn to legislative history."); *Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 988 (4th Cir.1996) ("We cannot endorse the Secretary's reading. To do so, we would have to violate both a clear canon of statutory construction, and the plain meaning of the two terms.").

In keeping with the tradition that requires us to protect the will of Congress, we hold that the regulation, 29 C.F.R. § 1601.12(b), may not be applied to allow Edelman's untimely charge to relate back to his November 14, 1997 letter.

## IV

Edelman argues that our decision today conflicts with our earlier discussions of the regulation in *Tinsley v. First Union National Bank*, 155 F.3d 435 (4th Cir.1998), and *Balazs v. Liebenthal*, 32 F.3d 151 (4th Cir.1994). We disagree.

In *Balazs*, the earlier of the two cases, we addressed the regulation in the context of a plaintiff's attempt to verify his allegations of discrimination almost four months after the EEOC issued plaintiff a right-to-sue letter and terminated its processing of his case. *See Balazs*, 32 F.3d at 157. The plaintiff made two arguments on appeal: first, that a charge of discrimination did not require verification; and, second, that an unverified charge may be cured by amendment. *See id.* at 156. We rejected outright the plaintiff's first argument, concluding, as we conclude today, that "a sworn charge of discrimination with the EEOC is a mandatory prerequisite to the validity of the charge." *Id.*

With respect to the plaintiff's second argument in *Balazs*, although we noted that "[i]t has been held that this regulation is valid and is not contrary to the statute requiring verification of charges," *id.* at 157 (citing *Peterson v. City of Wichita*, 888 F.2d 1307, 1308–09 (10th Cir.1989)), we refused to apply the regulation under the facts of the case, *see id.* We expressed our concern that "[c]arried to its logical conclusion, under the EEOC's interpretation of its regulation it would never be too late to verify a charge[.]" *Id.* Thus, we determined that "a reasonable construction" of the regulation would "simply allow charges to be verified and to relate back only so long as the charge is a viable one in the EEOC's files[.]" *Id.* Here, we similarly conclude that a reasonable construction must be imposed on the regulation, one which does not allow relation-back of the verification requirement beyond the time limitation prescribed by Congress.

We briefly mentioned both the regulation and *Balazs* in a footnote in *Tinsley:*

> The district court also rejected Tinsley's claim that her untimely formal charge amended and related back to her timely-but-unsworn letter. In so ruling, the district court inexplicably ignored the applicable EEOC regulation, 29 C.F.R. § 1601.12(b), which explicitly allows such an amendment. What is more, the district court ignored the recent conclusion of this Circuit approving the very use of the regulation that Tinsley, joined by the EEOC, urges: allowing her verified claim to amend and relate back to the date her unverified claim was filed.

*Tinsley*, 155 F.3d at 439 n. 2 (citing *Balazs*). We noted, however, that in light of our conclusion that Tinsley's verified charge was filed within the applicable limitations period, which we held to be 300 days rather than 180, there was no need to address the regulation. *See id.* ("Because we hold that the appropriate statute of limitations period was 300 days, we need

not resolve any of these other questions."). Thus, the most that can be said about our discussion of the regulation in *Tinsley* is that it is dictum. Moreover, contrary to Edelman's characterization, the facts of this case are materially different from those of *Tinsley*. Tinsley verified his allegations of discrimination within the statutory time period, whereas Edelman did not.

## V

Although our decision today is consistent with our prior discussions of the regulation, we are mindful that our analysis conflicts with that of several other circuits.

In *Philbin v. General Electric Capital Auto Lease, Inc.*, 929 F.2d 321 (7th Cir. 1991), the Seventh Circuit reversed a decision of the district court dismissing the plaintiff's Title VII action as untimely. *See id.* at 322. The *Philbin* court held that a timely filed Intake Questionnaire, which is verified after the limitations period, may be sufficient to constitute a charge.* *See id.* at 323.

The court relied on two factors in reaching its decision. First, the court stated that "Title VII is remedial legislation which must be construed liberally." *Id.* Citing its previous decision in *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357 (7th Cir.1968), in which it stated that the verification requirement was "directory and technical rather than mandatory and substantive," *Choate*, 402 F.2d at 359, the *Philbin* court concluded that "[i]n keeping with the broad purposes of the act, the omission of technical requirements which are later fulfilled should not affect the timeliness or validity of the charge." *Philbin*, 929 F.2d at 324.

In contrast to the Seventh Circuit, we have previously held that the oath require-

ment contained in Title VII "is cast in mandatory terms." *Equal Employment Opportunity Comm'n v. Appalachian Power Co.*, 568 F.2d 354, 355 (4th Cir. 1978). We also noted then, as we confirm now, that we "see no reason to ignore the plain language that Congress has enacted." *Id.; accord Hamel v. Prudential Ins. Co.*, 640 F.Supp. 103, 105 (D.Mass.1986) ("Although an Intake Questionnaire is signed, it is not signed under oath. Any suggestion that this distinction is formalistic tends to ignore the significance of a perjury conviction.").

The second factor relied upon by the *Philbin* court was "the deference accorded EEOC regulations." *Philbin*, 929 F.2d at 324. In applying the *Chevron* analysis, the court failed to give sufficient weight to the plain language of the statute, focusing instead on whether the EEOC's regulation represented a reasonable interpretation of the statute. The court did note, however, that "[w]hile the statute does require that a complainant verify a charge, the statute does not require that the verification take place prior to the expiration of the 300–day time period." *Id.*

As discussed in Section III above, we read the plain language of the statute differently. Moreover, while we recognize the remedial nature of Title VII, we see no reason to distort Congress's mandate that charges be timely verified in order to make room for the EEOC's regulation. *Cf. Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (holding that there is "no satisfactory basis for giving Title VII actions a special status under the [Federal] Rules of Civil Procedure").

Finally, we note that the Seventh Circuit is not the only other circuit to have ad-

---

* The court did not go so far as to say that a subsequently-verified Intake Questionnaire will always constitute a charge. *See Philbin*, 929 F.2d at 324. Instead, the court considered the EEOC's treatment of the questionnaire. Specifically, the court recognized that the EEOC had not only assigned a charge number to the questionnaire within the 300–day time period, but also notified Philbin's employer within the same period. *See id.* In Edelman's case, the EEOC neither assigned a charge number nor notified Lynchburg College of Edelman's claim within the 300–day limitations period.

dressed the conflict between the EEOC regulation and the statutory provisions of Title VII. Other circuits have approved the application of the regulation to permit the relation-back of charges that were verified after the limitations period. *See Peterson v. City of Wichita,* 888 F.2d 1307, 1308 (10th Cir.1989) (rejecting the district court's conclusion that regulation was contrary to statute and thus beyond EEOC's power to promulgate); *Casavantes v. California State Univ.,* 732 F.2d 1441, 1442–43 (9th Cir.1984) (noting that its position is "consistent with the recent trend in Title VII jurisprudence which recognizes the importance of nontechnical interpretations of the procedural requirements inherent in the processing of discrimination claims"; condemning contrary position as "overly formalistic"); *Price v. Southwestern Bell Tel. Co.,* 687 F.2d 74 (5th Cir.1982) (reversing summary judgment in favor of employer because factual issues remained as to whether form completed by plaintiff constituted "charge" and as to whether EEOC waived verification requirement). *But see Lawrence v. Cooper Communities, Inc.,* 132 F.3d 447 (8th Cir.1998) (holding that Intake Questionnaire does not constitute a "charge" because it is not verified and that regulation only allows an amendment to relate back to the date a charge is first received).

We disagree with these decisions, in short, because we believe that they improperly substitute policy justifications for clear statutory language. *See* Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* §§ 3.2, 3.3 (3rd ed.1994) (discussing *Chevron*'s attempt to curtail judicial policy-making).

## VI

■ Although we conclude that Edelman failed to timely file a charge of discrimination, we recognize that this failure does not deprive the court of subject matter jurisdiction. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("We hold that

filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). *But see Davis v. North Carolina Dep't of Correction,* 48 F.3d 134, 137 (4th Cir.1995) (discussing Title VII's exhaustion requirement in jurisdictional terms).

■ Before we affirm the dismissal of Edelman's Title VII claim, we consider whether the facts of this case warrant equitable tolling of the limitations period. Edelman was represented by counsel at all stages of the administrative process. In fact, his initial letter to the EEOC referenced his attorneys by name. Despite the fact that Edelman attempts to attribute significant delay to the EEOC's processing of his complaint, he waited more than five months after the alleged discrimination before even contacting the agency. Moreover, the EEOC mailed the draft charge to him before the expiration of the limitations period. Had he promptly signed and returned the proposed draft, which included a form of oath or affirmation, his charge would have been timely filed.

We hold that Edelman is not entitled to equitable tolling of the limitations period. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) ("[T]he principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect.").

## VII

We believe this case is best summed up in the words of the Supreme Court:

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.... [I]n the long run, experience teaches that strict adherence to the procedural requirements specified

by the legislature is the best guarantee of evenhanded administration of the law.

*Baldwin County Welcome Ctr.*, 466 U.S. at 152, 104 S.Ct. 1723.

The judgment of the district court dismissing Edelman's action is affirmed, but on remand the district court should take proper action to indicate that the dismissal is for failure to exhaust administrative remedies rather than for lack of subject matter jurisdiction.

*AFFIRMED AND REMANDED.*

LUTTIG, Circuit Judge, concurring:

I would decide this case on the narrow ground that Edelman's second filing is ineligible for relation back because (1) Edelman characterized his initial filing as a *request* for a charge rather than as a charge; (2) the EEOC did not even treat Edelman's original filing as a charge; (3) the EEOC never served a copy of the letter on Lynchburg College; and (4) the second sworn letter, which allegedly amended the first letter, even alleges different discriminatory conduct than that charged in the original letter.

I am sufficiently uncomfortable with the broader ground for decision set forth in the majority opinion, that verification may never relate back after 180 days from the date of the alleged discriminatory action, that I am unable to concur in the opinion for the court. As to this issue, we are not confronted with a single statute stating either by terms or in effect that "a verified charge must be filed within 180 days of a discriminatory action." Were we confronted with a single statute worded in this way, then the plain meaning interpretation advanced in the opinion for the court would, I think, be unassailable. Instead, we are presented with two statutes, the first providing that a charge shall be filed within 180 days of the unlawful employment practice, and the second providing that charges shall be in writing and include an oath or affirmation.

Although I confess some uncertainty as to this, it seems to me that, between these two statutes, there is not *necessarily* the nexus required in order to sustain the plain meaning interpretation advanced in the opinion. That is to say, it seems to me *at least plausible* to read the first statute to require simply that a charge be filed within 180 days, and the second as free-standing of the first, and simply to require that, before a charge is finalized, all of the allegations and information required by the EEOC be provided and verified. Of course, if the two statutes are so read as temporally independent of each other, or at least not temporally coterminous, then there is no statutory requirement that the charge be verified within the 180 days, and relation back would be available by regulation.

Apart from what I believe is its inherent structural logic, this interpretation is plausible because there is no statutory definition of "charge," contrary to the implicit premise of the majority's opinion. There is no statutory definition that provides that, in order to constitute a "charge," an allegation must be verified. Thus, the "charge" that must be filed within 180 days need not—at least need not by definition—be an allegation that is verified or that includes all the information that eventually must be provided before it is sufficiently complete to require notice to the employer. Insofar as the statute informs us, the "charge" that must be filed within 180 days can be merely an allegation of discrimination; it need not be verified.

As precisely as I can state it—and I readily concede that the point is conceptually elusive—the majority's interpretation seems to me actually to depend entirely upon reading the two statutes as if they were one. And I fear that it is *only* through reading the two as one that the nexus necessary to the majority's interpretation is supplied; in other words, unless the two statutes are read as one, I believe that it is impossible to say, with the certainty necessary to abrogate the agency's

contrary interpretation, that a charge must be filed *and* verified within 180 days of the alleged discriminatory action.

I do not believe that the alternative interpretation I suggest is the only interpretation of the two statutes, by any means. Indeed, I do not even believe that it is the better interpretation; in fact, I believe that the one adopted by the majority is the better. But I do believe that this alternative interpretation of the agency is a plausible one. And, of course, being such, we are bound to give deference to that administrative interpretation.

For these reasons, I concur only in the judgment of the court.